UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DANIEL L. USHERY, JR.,

      Plaintiff,

v.                                    Case No: 5:21-cv-611-BJD-PRL

B.M. ANTONELLI, et al.,

      Defendants.

_____

## ORDER

      Plaintiff, Daniel L. Ushery, Jr., an inmate of the Federal Bureau of Prisons (BOP), is proceeding on a complaint for the violation of civil rights under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) (Doc. 1; Compl.) against three Defendants: the warden of his institution, B.M. Antonelli, and two medical providers, Dr. Richard Li and M. Berman. Plaintiff alleges Defendants were negligent in their treatment of and deliberately indifferent to an allergic reaction Plaintiff suffered in response to a medication Defendant Li prescribed in July 2021. Compl. at 16. Plaintiff contends he was still suffering from the side-effects of the allergic reaction when he filed his complaint in December, including fatigue; suicidal thoughts; anxiety; swelling of limbs, joints, and muscles; anemia; and itchy, flaky skin. Id. at 19, 21. Defendants have not yet been served, and Plaintiff has requested

an extension of time to provide service forms (Doc. 8).[1]

Before the Court is Plaintiff's motion for emergency temporary restraining order under Federal Rule of Civil Procedure 65 (Doc. 7; Pl. Mot.), which includes a memorandum of law, prison records, and declarations (his own and that of a fellow inmate). Plaintiff asserts that since filing this lawsuit, Defendant Antonelli "and his agents" have retaliated against him. Pl. Mot. at 3. He explains two officers recently sprayed him with chemical agents and placed him in ambulatory restraints to punish and intimidate him for filing grievances, complaining of staff misconduct, and for seeking protective custody and a "separation order from Defendant B.M. Antonelli and his agents." Id. at 27. According to a prison medical record, on March 16, 2022, Plaintiff was sprayed with chemical agents and then "decontaminated per BOP protocol." Id. at 33. Plaintiff contends he was not afforded sufficient time to decontaminate and was placed in restraints for sixteen hours afterward. Id.

Plaintiff also complains that he incurred a disciplinary report for asking to be removed from general population because he feared for his safety. Id. at 5, 26. The disciplinary report was completed by J. Martin, who is not a named Defendant in this action. Id. at 34. Plaintiff says that a "threat . . . has been

---

[1] The Court will address Plaintiff's motion for extension of time (Doc. 8) by separate order.

issued on his life," but he does not say by whom or when the threat was made. Id. at 5. It appears Plaintiff is referring to the fact that an officer who is not a Defendant "announced to the entire special housing unit . . . that Plaintiff had ask[ed] for protective custody," which Plaintiff believes was done "strategically" to place him in harm's way because inmates consider those in protective custody to be snitches or pedophiles. Id. at 10-11, 25.[2]

Plaintiff argues he will suffer immediate and irreparable injury if a temporary restraining order is not issued because Defendants have not provided him with adequate medical care, despite his numerous requests for treatment following the July allergic reaction. Id. at 7, 9, 13, 19. He says he wants to be referred to a specialist "to determine the most effective treatment post-consumption [of the medication]" that caused the allergic reaction. Id. at 29. Plaintiff further avers that Counselor Rivera (who is not a named Defendant) became "combative" with him when he asked for copies of his complaint and refused to give him grievance forms; he has been subjected to retaliatory cell searches; Counselor Jones (not a named Defendant) "quarreled" with him and became "irate" when he asked for protective custody status; officers have forced him and other inmates to wear clothing that is too small;

---

[2] In an abundance of caution, the Court issued a standing order directing the Clerk to email a copy of Plaintiff's motion to his correctional facility for any action that may be warranted. See Order (Doc. 9).

Warden Antonelli requires inmates to "salute" him "and his agents" at least once per week; and Officer Corbin (not a named Defendant) threatened to "place [Plaintiff] in a cell with another inmate who would kill [him] on the orders of . . . Corbin." Id. at 17, 19, 23, 25, 27, 29. Plaintiff seeks an order

> restraining Defendant B.M. Antonelli . . . and his agents from physically harming [Plaintiff]; destroying legal documents and personal papers and effects; issuing falsified incident reports; tampering with . . . legal mail and personal mail; divulging sens[i]tive information to the inmate population about [Plaintiff's] protective custody . . . status; or interfering with his right to access the court and use the institutions [sic] law library.

Id. at 3.

Injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction,[3] "is an 'extraordinary and drastic remedy,' and [the movant] bears the 'burden of persuasion.'" Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)). To demonstrate entitlement to injunctive relief, a movant must show the following four prerequisites:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is

---

[3] The primary distinction between a temporary restraining order and a preliminary injunction is that the former is issued ex parte, while the latter requires "notice to the adverse party." Fed. R. Civ. P. 65(a), (b). See also M.D. Fla. R. 6.01, 6.02 (describing the requirements for the issuance of temporary restraining orders and preliminary injunctions).

> not granted; (3) that the threatened injury outweighs
> the harm the relief would inflict on the non-movant;
> and (4) that entry of the relief would serve the public
> interest.

Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

With respect to the second prerequisite, "the asserted irreparable injury 'must

be neither remote nor speculative, but actual and imminent.'" Siegel, 234 F.3d

at 1176. A request for injunctive relief must be related to the claims raised in

the operative complaint. See Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th

Cir. 1997), opinion amended on reh'g, 131 F.3d 950 ("A district court should

not issue an injunction when the injunction in question is not of the same

character, and deals with a matter lying wholly outside the issues in the suit.").

Plaintiff fails to carry his burden. He asserts no facts showing a

likelihood of success on the merits of his underlying claim (deliberate

indifference). That Plaintiff may have stated a plausible claim against one or

more Defendants does not mean he has demonstrated a likelihood of success

on the merits of such a claim. See S. Wine & Spirits of Am., Inc. v. Simpkins,

No. 10-21136-Civ, 2011 WL 124631, at *2 (S.D. Fla. Jan. 14, 2011) ("It is not

enough that a merely colorable claim is advanced.").

But even had Plaintiff demonstrated a substantial likelihood of success

on the merits, he does not demonstrate "irreparable injury will be suffered if

the relief [he seeks] is not granted." See Schiavo, 403 F.3d at 1225.

Importantly, Plaintiff suffered an allergic reaction in July 2021. <u>See</u> Compl. at 16. Plaintiff acknowledges he received treatment for the allergic reaction, though it was not as fast or as thorough as he thought it should have been based on what he read about the medication on the internet. <u>Id.</u> at 14, 16-18. Whether the medication Defendant Li prescribed caused or will cause long-term problems of the kind Plaintiff describes—liver, kidney, muscle, or joint damage—is merely speculative. <u>See</u> <u>id.</u> at 14. Plaintiff's contention that he "fear[s] he may have liver or kidney disease" appears to be based solely on the online research he conducted, not on sound medical advice or specific symptoms that a medical professional has attributed to the allergic reaction he suffered nearly a year ago. <u>See</u> <u>id.</u> at 20. Plaintiff's failure to demonstrate irreparable harm, alone, justifies denial of his motion because "[a] showing of irreparable harm is 'the <u>sine qua</u> <u>non</u> of injunctive relief.'" <u>Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.</u>, 896 F.2d 1283, 1285 (11th Cir. 1990). Meaning, without a showing of irreparable harm, a request for injunctive relief fails.

Finally, accepting as true that Plaintiff was sprayed with chemical agents for no reason or for a fabricated reason on March 16, 2022, none of the named Defendants were involved in that incident, and Plaintiff provides no direct evidence showing the incident was related to or caused by his filing this

action. In other words, an alleged excessive force incident that occurred well after Plaintiff initiated this action "deals with a matter lying wholly outside the issues in the suit." See <u>Kaimowitz</u>, 122 F.3d at 43.

For these reasons, Plaintiff's motion (Doc. 7) is **DENIED**. If Plaintiff believes prison officials have violated his constitutional rights since initiating this action, he may file a new civil rights complaint against the offending individuals after exhausting his administrative remedies.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of April 2022.

BRIAN J. DAVIS
United States District Judge

Jax-6
c:   Daniel L. Ushery, Jr.

7